FILED

07/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0588

DA 18-0588

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 188

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TRISTAN JAMES MORALES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 17-0789
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Scott D. Twito, Yellowstone County Attorney, Michael Ellinghouse, Morgan Dake, Deputy County Attorneys, Billings, Montana

Submitted on Briefs:  July 15, 2020

Decided:  July 28, 2020

Filed:

                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Tristan James Morales appeals his conviction in the Thirteenth Judicial District Court, Yellowstone County, of one count of Sexual Intercourse Without Consent. Morales challenges the District Court's denial of his motion to strike a prospective juror for cause. We find no abuse of discretion and affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On July 12, 2017, the State charged Morales with one count of Sexual Intercourse Without Consent, a felony, alleging that he raped his eight-year-old niece earlier that year.[1] Morales entered a plea of not guilty and proceeded to trial. On the first day of trial, prior to voir dire, the court distributed a questionnaire to prospective jurors asking whether they or anyone they knew had been a victim of sexual assault or whether they held strong beliefs that would make it difficult to serve as a juror in Morales's case. The court then conducted individual in-chambers voir dire of sixteen prospective jurors based on their responses to the questionnaire. The court released seven of nine jurors Morales challenged for cause based on their experiences with or strong beliefs about sexual assault, one over the prosecution's objection. When the questioning turned to prospective juror R.C., she revealed in chambers that her sister, foster children with whom she grew up, and a close friend all had been sexually abused as children. The District Court questioned R.C.:

> Q. Okay. We all come to the courtroom with personal experiences and our background that shapes how we see the world, our issue here is can you take that information that you have with your friends and whatnot and set that

---

[1] Morales was also charged with one count of Tampering With Witnesses and Informants, but the State dismissed that charge prior to trial.

aside and listen to the evidence as it comes in fairly and impartially and follow the instructions on the law that I give you?

A. I don't think that I could.

Q. And could you elaborate on that, please?

A. Because I've seen the emotional damage that it caused later on through these things that – and between that and my religious belief that sexual relations are between a man and woman who have been lawfully married, it is hard for me to set those beliefs aside.

Q. Even if I instructed you on the law regarding the State's burden of proof, Mr. Morales'[s] presumption of innocence, and the fact that Mr. Morales does not have to present any evidence in this case whatsoever, do you feel like your background and experience would cause you a problem?

A. Probably not, then.

Q. So you would follow my instructions?

A. I would follow your instructions, yes, although it would be difficult to set this aside.

Q. Okay.

A. It's a hard place for me to be to try to—I've never been in that situation where I've had to separate those two beliefs.

Q. It's not necessarily separating, you can't forget everything you know, that's the reality. The issue, ma'am, is—like I say, we all come to this with backgrounds and experiences; the issue is Mr. Morales is guaranteed a fair trial; that during this trial process, it's the State that has the burden of proof, and that burden of proof is beyond a reasonable doubt; and because the State has the burden of proof, Mr. Morales doesn't have to present any evidence whatsoever. Furthermore, you cannot draw any type of negative inference if he chooses not to present any evidence.

Furthermore, he also has a guaranteed constitutional right not to testify. I would instruct you specifically on his constitutional right to testify, it's a right we all enjoy as citizens, but you can't consider it in any way, and furthermore, you cannot let it enter into your jury deliberations in any way.

3

So that's a synopsis of some of the law I would instruct you on in this case with regard to some of those issues; would you follow the law I give you?

A. (No verbal response.)

Q. And there's no right or wrong answer here, what I and the parties are looking for is for you just to tell us the truth.

A. (No verbal response.)

¶3　At this point, the prosecutor asked the court if she could elaborate and engaged R.C. in the following line of questioning:

Q. [Morales is] charged with something; right?

A. Right.

Q. We are not asking you to say that an act is okay, you are not setting aside your religious beliefs, the law is that it's not okay, so what you need to decide is if he did it, he's guilty, right, and so the State has to prove that to you.

A. Right.

Q. So do you understand that difference?

A. I do understand that difference.

Q. That we are not asking you to decide that conduct is okay.

A. Right.

Q. Can you fairly listen to the evidence and be impartial when you are deciding another person's guilt?

A. I think that I could.

Q. You think that you could?

A. I think, I'm not—

Q. But can you—if the State fails to prove its case, you're listening to our witnesses, and it doesn't come together and we don't prove it, can you find him not guilty?

A. Yeah, I guess you're unable to prove—if all the facts are laid out and you are unable to prove without a doubt, then that's what it is.

¶4    Defense counsel then followed up:

Q. Do you like judging people?

A. Not particularly.

Q. Does your religious belief system suggest you not judge people?

A. Yes.

Q. Your personal experience with the group of people you've identified—your sister, the foster children and friends—does that make you feel pretty angry?

A. Not angry.

Q. Resentful?

A. Pained, is that the same thing—I don't think that's resentful.

Q. Do you feel a need to exercise out that pain?

A. No.

Q. If Mr. Morales says nothing, does nothing, do you expect him to defend himself?

A. I would expect his—you, as his representative, to defend him.

Q. And if we choose to sit quietly and say to the Court we choose not to put on a defense, will you hold that against him?

A. No, because they would be expected to prove their case.

Q. Would you anticipate that he—would you infer anything by him not putting on a case?

A. Yeah, I think so.

Q. What would you infer?

A. Probably guilt, because if you have nothing to hide, you hide nothing.

¶5 Morales moved to strike R.C. for cause. The prosecutor asked R.C. whether she would be able to follow the court's instructions and not infer guilt if Morales exercised his constitutional right to not testify. R.C. replied, "As a citizen, I would have to follow the law. Personal beliefs, I would have to set aside." The court addressed R.C.:

> Q. . . . I want to come back to your job as a juror [] to listen to the evidence and make a decision on whether he's guilty or not guilty, and that's on the evidence presented in the courtroom only and the law as instructed by me. Now, I can tell you right now what I'm going to instruct you on if you serve as a juror, number one, they have the burden of proof.
>
> A. Right.
>
> Q. They have to prove the offense, every element of it beyond a reasonable doubt; two, if the State doesn't meet their burden of proof, you must find him not guilty; three, the Defendant has absolutely no burden of proof, he may choose to rely on the State's failure to prove their case; four, individually, he has a constitutional right guaranteed by the United States and Montana constitutions, something we all enjoy as citizens, not to testify; and furthermore, you cannot infer anything based on his decision not to testify, and you cannot let that enter into your jury deliberations in any way; can you follow the law that I give you?
>
> A. Yes.
>
> Q. And despite knowing former foster children and relatives and friends who have been sexually abused, can you put that aside and judge Mr. Morales based solely on the evidence in this courtroom and not let that personal bias or knowledge that you have impact Mr. Morales and the evidence you hear in this courtroom?
>
> A. Yes.

6

Q. Are you certain?

A. Yes.

¶6    The court denied Morales's motion to remove R.C. for cause. Morales subsequently used a peremptory challenge to strike her from the panel and exhausted all of his peremptory challenges. At the conclusion of trial, Morales was convicted and sentenced to 100 years in prison, with 50 years suspended and a 25-year parole restriction. This appeal followed.

**STANDARD OF REVIEW**

¶7    We review for abuse of discretion a district court's denial of a challenge to a prospective juror for cause. *State v. Anderson*, 2019 MT 190, ¶ 11, 397 Mont. 1, 446 P.3d 1134 (citing *State v. Cudd*, 2014 MT 140, ¶ 6, 375 Mont. 215, 326 P.3d 417). "A district court abuses its discretion if it denies a challenge for cause when a prospective juror's statements during voir dire raise serious doubts about her ability to be fair and impartial or actual bias is discovered." *Anderson*, ¶ 11 (citing *Cudd*, ¶ 6); *see also State v. Jeremiah Johnson*, 2014 MT 11, ¶ 8, 373 Mont. 330, 317 P.3d 164. If the defendant subsequently uses a peremptory challenge to strike the prospective juror and ultimately exhausts all afforded peremptory challenges, the erroneous denial of a challenge for cause constitutes structural error requiring automatic reversal. *State v. Johnson*, 2019 MT 68, ¶ 7, 395 Mont. 169, 437 P.3d 147 (citing *State v. Good*, 2002 MT 59, ¶¶ 62-65, 309 Mont. 113, 43 P.3d 948); *see also State v. Allen*, 2010 MT 214, ¶ 20, 357 Mont. 495, 241 P.2d 1045.

7

¶8     Morales argues that the District Court abused its discretion in denying his for-cause challenge to R.C. because her voir dire statements demonstrated an inability to act fairly and impartially in his trial. He contends that because he had to exercise a peremptory strike to remove R.C. and subsequently exhausted his peremptory challenges, this Court must reverse and remand for a new trial.

¶9     Criminal defendants have a fundamental right to be tried by an impartial jury. U.S. Const. amend. VI; Mont. Const. art II, § 24. To safeguard this right, a defendant may challenge a prospective juror for cause if the juror evinces "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA; *see also Anderson*, ¶ 14; *Johnson*, ¶ 9; *Cudd*, ¶ 8.

¶10     Few people are entirely impartial regarding criminal matters. *See, e.g. State v. Ghostbear*, 2020 MT 60, ¶ 12, 399 Mont. 208, 459 P.3d 1285 (citing *Anderson*, ¶ 15); *Allen*, ¶ 26; *State v. Champagne*, 2013 MT 190, ¶ 20, 371 Mont. 35, 305 P.3d 61 (citing *State v. Jay*, 2013 MT 79, ¶ 20, 369 Mont. 332, 298 P.3d 396) ("[E]very person comes to jury duty with preconceptions."). But the dispositive inquiry is not whether the prospective juror has expressed a bias or fixed opinion, shares a common or similar experience with one of the parties, or expresses doubt about the ability to be fair and impartial. *Johnson*, ¶ 11. Rather, the district court must evaluate whether the totality of the juror's statements raises a serious question or doubt about his or her willingness or ability to set aside personal biases and render a verdict based solely on the evidence

presented. *See, e.g., Johnson*, ¶ 11; *Champagne*, ¶ 20 (citing *Jay*, ¶ 20); *State v. Falls Down*, 2003 MT 300, ¶ 23, 318 Mont. 219, 79 P.3d 797 (citing *State v. DeVore*, 1998 MT 340, ¶ 21, 292 Mont. 325, 972 P.2d 816, *overruled in part on other grounds by Good*, ¶ 63).

¶11 The court should err on the side of caution and remove a juror "if questioning raises serious doubts as to the juror's ability to be fair and impartial." *Anderson*, ¶ 15 (citing *Jay*, ¶ 19); *see also Johnson*, ¶ 11 (citing *State v. Braunreiter*, 2008 MT 197, ¶ 10, 344 Mont. 59, 185 P.3d 1024) (holding that district courts must resolve any doubt or ambiguity in favor of disqualification). The court evaluates the prospective juror's responses as a whole. *Cudd,* ¶ 15. Consistent with the abuse of discretion standard, because the trial judge "has the ability to look into the eyes of the juror in question, and to consider her responses in the context of the courtroom," we afford a trial court deference in making this determination. *State v. Robinson*, 2008 MT 34, ¶ 13, 341 Mont. 300, 177 P.3d 488 (citation omitted), *overruled in part on other grounds by State v. Gunderson*, 2010 MT 166, ¶ 50, 357 Mont. 142, 237 P.3d 74; *see also Cudd*, ¶ 9; *Jeremiah Johnson*, ¶ 20.

¶12 If a prospective juror makes a suspect statement, counsel or the court may ask open-ended questions to investigate, clarify, or confirm whether a serious question exists about the juror's bias or impartiality. *Johnson*, ¶ 12; *Allen*, ¶ 26. It is improper, however, for counsel or the court to attempt to rehabilitate the juror by asking leading or loaded questions eliciting a one-syllable answer, such as whether the juror will follow the law, jury instructions, or an order of the court. *Johnson*, ¶ 12. Such questions put ordinary

9

citizens in the untenable position of having to disagree with the court and are therefore inherently unreliable. *Johnson*, ¶ 12; *Good*, ¶ 54. In contrast, a prospective juror's spontaneous and unprompted responses to open-ended questions are the most likely to be reliable and honest. *Johnson*, ¶ 11; *State v. Russell*, 2018 MT 26, ¶ 14, 390 Mont. 253, 411 P.3d 1260; *Cudd*, ¶ 8; *Jeremiah Johnson*, ¶ 10; *Allen*, ¶ 26; *Braunreiter*, ¶ 9; *Robinson* ¶ 11; *DeVore*, ¶ 28.

¶13 Morales argues that R.C.'s initial, spontaneous voir dire statements raised serious doubts about her ability to be fair and impartial; that she tacitly resisted recanting; and that she agreed to follow the law by giving single-syllable answers only after continued prodding by the prosecutor and the District Court. He contends that our decisions in *Anderson* and *Johnson* are controlling.

¶14 In *Anderson*, ¶ 5, after voir dire had concluded, a juror selected for the panel voluntarily stated to the bailiff that he was "pretty sure the Defendant is guilty." The bailiff relayed this information to the district judge, who then questioned the juror in chambers. *Anderson*, ¶ 5. During questioning, the juror stated that he would "100 percent try" to weigh the evidence and follow jury instructions, but he would be troubled if Anderson chose not to testify, explaining that his belief "that an innocent man has nothing to hide prevails slightly above [] the idea of [] being accidentally trapped by a trick question [] from the other side and counsel." *Anderson*, ¶¶ 6-7. When asked later whether he could "give Mr. Anderson a fair shot," the juror responded, "I believe I could[,]" but then added, "There just is a slight bit of preconception stepping in, forward now. And that's, that's why I told the Bailiff why, what I wanted you to be aware of." *Anderson*, ¶ 19. The

10

district court explained the law and asked the juror if he could keep an open mind, to which the juror responded, "I can absolutely keep an open mind[.]" *Anderson*, ¶ 8. The district court denied Anderson's challenge for cause. *Anderson*, ¶ 8. We reversed, concluding that despite his eventual promise to keep an open mind, the prospective juror did not relinquish his opinion of Anderson's guilt, but instead reaffirmed his bias and tacitly resisted recanting several times. *Anderson*, ¶ 20. We reiterated that the juror's "multiple, spontaneous answers to previous questions were 'most likely to be reliable and honest' indicators of his state of mind." *Anderson*, ¶ 18 (quoting *Jay*, ¶ 19).

¶15 *Anderson* is distinguishable. Although R.C. initially expressed uncertainty about her ability to be impartial based on her experiences with victims of child sexual abuse, her statements taken as a whole reflect a willingness to set her beliefs aside and render a verdict based on the evidence presented. Unlike the juror in *Anderson*, R.C. firmly stated that she understood she would have to follow the law by applying the presumption of innocence and holding the State to its burden of proof. And when asked by the prosecutor whether she could be impartial and judge the evidence fairly, R.C. responded that she could.

¶16 *Johnson* also is distinguishable. There, a prospective juror made multiple spontaneous and emphatic statements that she would "have a hard time" and a "problem" requiring the State to prove an essential element of the charged offense and likely would be unable or unwilling to follow the court's jury instructions due to her strongly-held personal bias. *Johnson*, ¶ 4. The juror finally agreed in "single-syllable" answers to follow the jury instructions after being asked "a series of leading and loaded questions" by the prosecutor. *Johnson*, ¶ 16. The district court denied Johnson's for-cause challenge.

11

*Johnson*, ¶ 5. We reversed, holding that this was "a clear, if not quintessential, case of a prospective juror clearly and unequivocally manifesting serious questions as to whether she could be fair and impartial, followed by a recantation improperly coaxed by leading and loaded questions that would otherwise have required the juror to defy the court and the law." *Johnson*, ¶ 16. We observed, "This is not a case where a prospective juror merely had an experience in common with, or similar to, the experience of the accused or victim at issue. Nor is this a case where a prospective juror merely expressed concern about her ability to be fair and impartial but ultimately believed that she could and pledged to try." *Johnson*, ¶ 13. Rather, the juror expressed her bias in statements that were "consistent, clear, unequivocal, and emphatic[.]" *Johnson*, ¶ 15.

¶17 Like prospective jurors in many cases, R.C. had an experience in common with the victim. She expressed her concern about her ability to be impartial but ultimately concluded she was certain that she could be. Her responses contrasted sharply with those of prospective jurors S.C. and S.M., whom the District Court questioned in chambers immediately preceding R.C. and dismissed for cause on Morales's motion. The first, S.C., testified that her mother was sexually abused as a child and that she would be likely to find Morales guilty, "regardless of what the State does or doesn't do," if evidence presented at trial made her angry or resentful. She understood that the State had the burden of proof but stated only that she "probably" could be fair. The second, S.M., explained that his sister was sexually abused as a child. He stated repeatedly that he would have a hard time being fair and listening to the evidence presented, and he never relinquished this position.

¶18    Unlike S.C., R.C. explained that her experiences made her pained, rather than angry or resentful, and that she was certain she could be fair.  And unlike S.M., R.C. wavered in her response to counsels' questions but relinquished her initial responses. She concluded with confidence that she could set aside her personal beliefs and weigh the evidence.  This set R.C. apart from S.M. and S.C.  Like them, R.C. held life experiences similar to the victim's, but of the three, she alone "convincingly affirm[ed] [] her ability to lay aside any misgivings and fairly weigh the evidence."  *Cudd*, ¶ 9 (affirming the district court's denial of a for-cause challenge in a rape case to a prospective juror who disclosed that her daughter had been raped but agreed nonetheless to hold the State to its burden); s*ee also State v. Russell*, ¶¶ 17-19 (upholding denial of a challenge for cause in a felony DUI case to a prospective juror whose sister was injured, and brother-in-law killed, by a drunk driver; though he initially expressed concern because of his own similar experiences, the prospective juror did not show an inability to act with impartiality and without prejudice in the case).

¶19    Morales argues that the District Court improperly coaxed R.C. into recanting her initial statements, but the record does not support this contention.  Rather than leading R.C. to give the answer it wanted, the court explained the law and the trial process in an attempt to determine whether she was comfortable in having to put aside her personal beliefs and experiences.  "[E]ducating jurors about the process and dispelling honest misconceptions they may hold is a proper function of voir dire, and should not be viewed as alarming or disqualifying.  That purpose, along with the deference we are to give to a district court's determination regarding a challenge for cause . . . provides significant leeway for open

13

dialog[ue] about juror viewpoints during juror selection." *Johnson*, ¶ 19 (Rice, J., concurring) (citing *Robinson*, ¶ 13). The record reflects that the District Court educated R.C. about the law and a juror's role and asked open-ended questions to gauge whether she could be fair, assuring her, "There's no right or wrong answer." Unlike the trial court's summary denial of the defendant's for-cause challenge in *Johnson*, the District Court here followed up again to ensure R.C. was comfortable setting her personal beliefs aside and rendering a verdict based solely on the evidence.

¶20 In *Champagne*, this Court affirmed the district court's denial of the defendant's for-cause challenge to prospective juror Lamere. Lamere initially indicated that he would draw a negative inference if Champagne chose not to testify and preferred Champagne to prove his innocence. *Champagne*, ¶ 26. Once the district court explained the presumption of innocence and the right not to testify, however, Lamere averred that he would follow the law as instructed by the court and would remain impartial. *Champagne*, ¶ 26. We affirmed, deferring to the district court's determination that Lamere's responses, taken as a whole, demonstrated his ability to be fair. *Champagne*, ¶ 26.

¶21 Like Lamere, R.C. initially expressed doubt about her ability to be impartial. She agreed with defense counsel that she might infer guilt if Morales did not put on a case and that her personal experiences would make it difficult to presume him innocent. But once the District Court explained the applicable law, she agreed that she would be able to follow it. In fact, she was "certain" she could do so. This further distinguishes R.C. from the prospective juror in *Johnson*, ¶ 14, who emphatically and repeatedly expressed a "problem" with following the law. As we held in *Robinson*, ¶ 10, the trial court does not abuse its

14

discretion when it concludes, based on the totality of the prospective juror's answers, that she can be impartial after the juror initially expresses concern about remaining impartial but believes she can lay aside her concerns and fairly weigh the evidence.

¶22 Based on the totality of R.C.'s statements during the District Court's thorough in-chambers voir dire, we conclude that the court did not abuse its discretion in accepting R.C.'s ultimate assurance that she could lay aside her personal experiences and fairly and impartially weigh the evidence despite her initial statements of prejudice.[2]

## CONCLUSION

¶23 The District Court did not abuse its discretion in denying Morales's for-cause challenge to R.C. The judgment of conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

---

[2] Observing a need for better direction to the trial courts in handling challenges for cause, Justice Gustafson suggests applying a rebuttable presumption for removal of a prospective juror under certain circumstances. Dissent, ¶ 36. Though she raises valuable considerations, imposing such a presumption would be a departure from our existing approach and has not been suggested or briefed by the parties. Applying the guidance that our precedent supplies, the District Court did not abuse its discretion in denying the challenge here.

15

Justice Laurie McKinnon, dissenting.

¶24 "It is incontrovertible that jury impartiality goes to the very integrity of our justice system, and that the right to an impartial jury is so essential to our conception of a fair trial that its violation cannot be considered harmless error." *State v. Herrman*, 2003 MT 149, ¶ 22, 316 Mont. 198, 70 P.3d 738. In my opinion, the Court errs by narrowly focusing its inquiry on whether R.C. had a "fixed opinion," thereby hemming in our precedent and resulting in a finding of no abuse of discretion, just because R.C. subsequently—albeit, grudgingly—indicated she could follow the law. I respectfully dissent.

¶25 This Court clarified in *DeVore* and decisions thereafter that whether a prospective juror had a "fixed opinion" is only one part of the inquiry under the "state of mind" basis in a for-cause challenge as set forth in § 46-16-115(2)(j), MCA. *See State v. Golie*, 2006 MT 91, ¶ 25, 332 Mont. 69, 134 P.3d 95. Here, it is true that R.C. indicated several fixed opinions which she later agreed to set aside, Opinion, ¶ 21, but her initial thoughtful and revealing statements, together with the circumstances underlying them, demonstrated a "state of mind" which was not consistent with the impartiality required of jurors.

¶26 Morales was charged with Sexual Intercourse Without Consent, committed against his eight-year-old niece. R.C., as a then-prospective juror, came forth and expressly revealed that she could not be fair and impartial because her sister, foster children with whom she grew up, and a close friend had all been sexually abused as children. R.C. also equivocated on whether she would hold the State to its burden of proof, stating she "guess[ed]" she could find Morales not guilty if the State did not prove its case. Further, R.C. stated she would infer Morales's guilt if he said nothing or chose not to put

16

on a case, explaining, "[I]f you have nothing to hide, you hide nothing." Only after the court's leading questioning of R.C. did she respond with one-word answers like, "Right," and agree to follow the court's instructions and the law. However, R.C.'s monosyllabic answers and acknowledgment she could follow the law after being educated on the obligations of being a juror did not evidence a change in R.C.'s "state of mind."

¶27 The Court appears to reason that for a prospective juror to be disqualified the record must affirmatively establish, first, that specific and suspect statements were made indicating bias and, second, that the prospective juror remained steadfast in his or her conviction, refusing to agree to follow the court's order or the law. This approach, however, erroneously narrows this Court's precedent by focusing only on whether the prospective juror refused to relinquish a fixed opinion. In support of this circumscribed interpretation of our case law, the Court draws comparisons between the present case and *Anderson*, *Johnson*, and *Champagne*. These prior decisions, however, establish only whether particular responses have indicated bias or raised questions of impartiality. We have emphasized that "a 'one size fits all' rule defining all possible factual circumstances justifying a challenge for cause simply is not feasible." *Golie*, ¶ 18. We have further provided:

> Ultimately, despite factual distinctions, the issues in "challenge for cause" cases under § 46-16-115(2)(j), MCA, remain constant: whether a prospective juror's statements have demonstrated a "state of mind" affecting his or her ability to be impartial and act without prejudice to either party, and whether a "serious question" has arisen in that regard.

*Golie*, ¶ 18. If the answer to either, or both, inquiries is yes, then dismissal for cause is favored. *Golie*, ¶ 18. Rather than relying upon an evaluative differentiation of one

17

circumstance of juror bias in comparison to another, Opinion, ¶¶ 14-16, 20-21, an individualized approach to the analysis—looking to the prospective juror in question's state of mind in the present case—is the proper method under Montana law for determining improper bias or lack of impartiality in jurors.

¶28 The "fixed opinion" rule is only one argument that may be made under the "state of mind" basis for a challenge for cause as set forth in § 46-16-115(2)(j), MCA. Here, the inquiry should not focus on whether the record demonstrates that R.C. did *not* have a fixed opinion regarding Morales, inasmuch as she could put it aside and follow the instructions of the court, but rather whether she expressly articulated a "state of mind" indicating bias or impartiality. Prior to *DeVore,* this Court had held that "disqualification based on a juror's alleged prejudice is necessary *only* where jurors 'form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court.'" *DeVore*, ¶ 21 (citations omitted; emphasis added). However, in *DeVore* we explained that frequently, jurors are reluctant to admit actual bias, and biased attitudes must be revealed by circumstantial evidence. *DeVore*, ¶ 23. We recognized that "[i]n the majority of our prior cases that have addressed juror partiality, jurors did not necessarily state a fixed opinion about the defendant's guilt, but nonetheless circumstantial evidence of bias was apparent in relation to the particular circumstances of the defendant's case." *DeVore*, ¶ 23. *See, e.g., State v. Chastain*, 285 Mont. 61, 63-64, 947 P.2d 57, 59 (1997) (involving a defendant charged with sexually assaulting his young female relatives and a juror who expressed bias based on his sister's

18

abduction at the age of sixteen). A district court's obligation to uphold a defendant's right to a fair and impartial jury was articulated by this Court in *DeVore*:

> Ultimately, despite a juror's best intentions and his professed willingness to follow a district court's orders, there is an abuse of discretion when a district court chooses to ignore a juror's expressed statements that he believes the defendant to be guilty of something in favor of its own attempt to rehabilitate the juror.

*DeVore*, ¶ 31. Here, R.C. made several statements which indicated she could not impartially judge Morales. Her monosyllabic responses to the court's instructions did not demonstrate she possessed the impartiality required of a juror.

¶29 The purpose of voir dire is to determine the existence of bias and prejudice on the part of prospective jurors, to enable counsel to intelligently exercise his or her peremptory challenges, and to enable counsel to properly raise a challenge for cause pursuant to § 46-16-115(2)(j), MCA. *Great Falls Tribune v. Mont. Eighth Judicial Dist. Court*, 186 Mont. 433, 440, 608 P.2d 116, 120 (1980); *see also Whitlow v. State*, 2008 MT 140, ¶ 29, 343 Mont. 90, 183 P.3d 861. A district court or litigant may ask open-ended questions to allow a prospective juror to clarify initial, suspect statements and thereby allay concerns of lack of impartiality. *Allen*, ¶ 26. It is not a district court's role in voir dire to rehabilitate jurors by asking leading questions which coax jurors to recant bias-revealing responses; such wheedled recantations fail to demonstrate the impartiality required of jurors. *State v. Freshment*, 2002 MT 61, ¶ 12, 309 Mont. 154, 43 P.3d 968. When determining whether improper rehabilitation has occurred, this Court must focus on whether a juror's spontaneous—and thus most reliable and honest—responses raised a serious question

19

about his or her ability to be fair and impartial. *State v. Heath*, 2004 MT 58, ¶ 26, 320 Mont. 211, 89 P.3d 947.

¶30    Here, R.C.'s statements raised a serious question about her ability to be fair and impartial and the Court's narrow focus on her relinquishment of a "fixed opinion" distorts the broader inquiry required by our precedent and § 46-16-115(2)(j), MCA. R.C. had demonstrably articulated a state of mind with respect to the charged offense of child sexual abuse, a highly serious and emotional criminal offense, based on her own personal experiences with close family members which she described as "pained." She questioned whether she could fairly consider the evidence. She believed that if someone has nothing to hide, they should testify and present a case. Under the totality of circumstances, R.C. demonstrated she had a "state of mind" which prevented her from "acting with entire impartiality." Section 46-16-115(2)(j), MCA.

¶31    The Court focuses on whether R.C. exhibited any actual bias or fixed opinion of guilt towards Morales, concluding that she did not because she responded she could follow the court's instructions. Almost any juror would respond affirmatively to a judge and attorney's direct questions as to whether the juror would follow the court's orders and the law. However, "in the majority of our prior cases . . . jurors did not necessarily state a fixed opinion about the defendant's guilt, but nonetheless circumstantial evidence of bias was apparent *in relation to the particular circumstances of the defendant's case*." *DeVore*, ¶ 23 (emphasis added). Here, we have R.C. herself providing direct evidence through her own statements that she would be a biased juror and thus had a "state of mind" which prevented her from being entirely impartial as required by § 46-16-115(2)(j), MCA. The

most telling and revealing evidence of R.C.'s inability to be impartial were her initial, spontaneous responses that she did not think she could be fair given close relatives and personal friends had suffered from the very same and serious crimes Morales was charged with. The colloquy that followed regarding the court's instructions and the law does not remove the "serious question" of R.C.'s "state of mind" of partiality against Morales.

¶32 This Court has previously been steadfast in favoring dismissals for cause—when a non-speculative "serious question" arises about a prospective juror's ability to be fair and impartial. In *State v. Williams*, 262 Mont. 530, 539-40, 866 P.2d 1099, 1104-05 (1993), we stated:

> [W]hen voir dire examination discloses a serious question about a juror's ability to be fair and impartial, that question should be resolved in favor of excusing that juror. *The role of the District Court is not to simply establish some record from which a future argument can be made that the juror recanted his or her admission of bias.*
>
> While there may be some temporary inconvenience to the court and to the parties from excusing a juror for cause, that inconvenience is minor compared to the expense and inconvenience that results from having to retry criminal cases.

(Emphasis added). Where a prospective juror's ability to be impartial has been put at issue by the juror herself, as here, the constitutional right to a trial by an impartial jury and the significant expense and inconvenience that results from retrial has counseled this Court to find an abuse of discretion in denying a defendant's challenge for cause. "It is fair to say that the failure to grant a valid challenge for cause negatively impacts the overall administration of justice." *Golie*, ¶ 29.

¶33 I would conclude that the District Court abused its discretion in failing to dismiss R.C. for cause. Because it is undisputed that Morales exercised a peremptory challenge to remove R.C. and exhausted all of his peremptory challenges, I would reverse for structural error.

/S/ LAURIE McKINNON

Justice Dirk Sandefur joins in the Dissent of Justice Laurie McKinnon.

/S/ DIRK M. SANDEFUR

Justice Ingrid Gustafson, dissenting.

¶34 I dissent from the majority's affirmation of the District Court's denial of Morales' for-cause challenge to R.C. and join in Justice McKinnon's dissent.

¶35 The Opinion and Justice McKinnon's Dissent both lay out similar legal frameworks, both indicate a juror's state of mind may involve both fixed or concerning opinions and/or shared experiences, both note that spontaneous and unprompted responses are the most reliable indicators in assessing a juror's state of mind, both condemn using leading questions to try to rehabilitate the juror, both indicate the need to err on the side of caution to remove a juror if questioning raises a doubt as to the juror's ability to be fair and impartial, and both use prior precedent in support of the ultimate conclusion. Both then reach different conclusions. Over the recent past, we have had a number of for-cause juror challenge appeals. Similar to this case, we have laid out the legal analysis contained in the Opinion and Justice McKinnon's Dissent and decided most of these cases on a split basis.

22

¶36    In my opinion, the direction we have provided for district courts to reach consistent decisions regarding for-cause challenges to jurors has been lacking, resulting in an increased number of such appeals.  I believe our prior holdings to err on the side of caution and remove a juror if questioning raises considerable doubts as to the juror's ability to be fair and impartial can and should be interpreted as a presumption for recusal if a juror expresses unprompted statements indicating she or he could not be impartial or advances a fixed or set belief indicating the existence of a bias or prejudice to either side.  The presumption could then only be overcome if, in the course of open-discussion—not leading questions followed by monosyllabic responses—the juror unequivocally expresses an ability to set aside the set belief or bias or otherwise expresses recognition that his or her shared experience would not impact the way in which the juror perceives the alleged victim, the defendant, or the state.

¶37    It has been my experience when jurors come to the courtroom for voir dire, they are usually reserved, nervous, and very unsure as to what is happening.  Generally, they avoid speaking out or calling any individual attention to themselves.  When a juror is bold enough to actually express in an unprompted manner a bias or concern that she or he is either unable to be fair or impartial or has concerns regarding his or her ability to be fair or impartial, it indicates to me that the individual would have a very difficult time putting aside that bias and not letting it infect how she or he looks at the evidence.  It calls into question whether she or he has a state of mind that is truly impartial.  In jury challenge cases we are balancing the defendant's constitutional right to a fair trial against the practicalities of losing too many jurors such that trial has to be rescheduled.  This

23

heightened right to a fair trial, however, is the basis of this Court's prior holdings that courts should err on the side of disqualification when a juror's mind set calls into question his or her ability to be fair and impartial and act without prejudice to either party. *Anderson*, ¶ 15; *see also Jeremiah Johnson*, ¶ 19; *Jay*, ¶ 19; and *Golie*, ¶ 18.

¶38 In my opinion, the difference between the Opinion and Justice McKinnon's Dissent is that the initial unprompted utterance bringing into question the juror's state of mind is weighted more heavily in the Dissent—which I believe more closely comports with our prior holdings that courts should err on the side of caution and remove a juror if questioning raises doubts as to the juror's ability to be fair and impartial. Here, I believe the District Court was genuinely trying to figure out what juror R.C.'s mindset was as opposed to merely trying to manipulate a recantation while also being concerned about trial management and not losing more jurors. I also believe R.C. was less biased than two other jurors who were excused. But given the heightened right to a fair trial, how emotionally charged child sexual abuse cases are, and R.C.'s expression of both a preconceived notion that the defendant should testify if he had nothing to hide, combined with her shared experience of understanding how emotionally devastating sexual abuse is to a victim, I believe our prior holdings to err on the side of recusal are implicated. Thus, in this case, I would conclude the District Court abused its discretion in failing to dismiss R.C. for cause.

¶39 Frequently for-cause challenge appeals involve jurors expressing an expectation or fixed belief the defendant should testify and tell his or her version of events to prove she or he did not commit the offense. This expectation generally comes from a lack of understanding of the law as to the State's burden of proof, as well as a lack of understanding

24

of the defendant's constitutional right not to testify or present evidence. To avoid these juror misconceptions, it may be helpful for district courts to educate jurors at the outset of trial before voir dire as to what is going to happen, how voir dire works, its purpose, the State's burden of proof, and the defendant's absolute right not to testify or present evidence. Having some information as to these concepts in advance may better assist jurors in understanding the voir dire process and in responding to counsels' questions.

/S/ INGRID GUSTAFSON

Justice Dirk Sandefur joins in the dissenting Opinion of Justice Gustafson.

/S/ DIRK M. SANDEFUR