FILED

07/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0083

DA 18-0083

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 191N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT JAMES LeCOU,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DC 16-11
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellant
Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

          Alex Nixon, Carbon County Attorney, Dan Guzynski, Special Deputy
County Attorney, Red Lodge, Montana

Submitted on Briefs:  July 15, 2020

Decided:  July 28, 2020

Filed:

              _____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert James LeCou appeals the judgment of the Twenty-Second Judicial District Court, Carbon County, adjudging him guilty of three counts of deliberate homicide and sentencing him to three hundred years' imprisonment without the possibility of parole. We affirm on the single issue LeCou raises, concluding that the District Court did not abuse its discretion when it denied LeCou's motion to strike a prospective juror for cause.

¶3 On April 8, 2016, the State charged LeCou with three counts of felony deliberate homicide in connection with the shooting deaths of his wife Karen and her sister and brother-in-law, Sharon and Lloyd Lamb. The three victims were found dead a day earlier in the home they shared with LeCou, each with multiple bullet wounds.

¶4 LeCou's case proceeded to trial on June 4, 2017. Defense counsel inquired during voir dire whether prospective jurors would hold against LeCou his decision not to testify. Prospective Juror Greenough was one of three jurors to respond in the affirmative:

> Mr. Greenough: I was raised to look a man in the eye and say what I think. And my main concern is for the victims' family. I would have a lot of problems hearing somebody say, "Yeah, I didn't do it."

2

[Defense counsel]: So my question is if Mr. LeCou does not testify and the judge instructs you, after you've heard all of the evidence, that you can't factor that into your decision making, are you going to be able to follow that?

Mr. Greenough: Of course I'd listen to the judge. I'm not sure I'd sway my opinion on that. I like to have a man look me in the eye and tell me what happened. That's the way I was raised.

[Defense counsel]: Sure. So given that opinion, can you be—can you give us assurances that you would be a fair and impartial juror?

Mr. Greenough: I don't think I can.

[Defense counsel]: Okay. Your Honor, with that, I move for Mr. Greenough to be challenged for cause.

¶5    The State followed up:

[State]: Mr. Greenough, it seems like you have a personal code of honor. Is that right?

Mr. Greenough: I believe I do.

[State]: And I would imagine as part of that code of honor that you would stand by your word, correct?

Mr. Greenough: Absolutely.

[State]: And I would imagine that would include if you took an oath you would fulfill your duty and listen to the judge. Is that correct?

Mr. Greenough: If I took an oath, yes.

[State]: And I think that from what I've heard from you that you could sit here and listen to the people that have stories to tell and fairly evaluate them for what credit you think it deserves. Does that seem fair?

Mr. Greenough: Yes.

[State]: Your Honor, I'm going to object.

¶6    Then the court addressed the prospective juror:

3

The Court: Mr. Greenough, the question is if I give you an instruction to you [sic] and if the defendant doesn't testify, that you cannot consider that fact in coming to your verdict. Can you honor the Court's instruction? Would you be willing to commit and promise that you would honor that?

Mr. Greenough: Yes.

The Court: Very well. The challenge for cause is denied.

¶7 At the close of voir dire, LeCou used a peremptory challenge to remove Prospective Juror Greenough from the jury and exhausted all of his peremptory challenges. After a six-day trial, the jury found LeCou guilty of all three counts of deliberate homicide.

¶8 We review a district court's denial of a challenge to a prospective juror for cause for an abuse of discretion. *State v. Johnson*, 2019 MT 68, ¶ 7, 395 Mont. 169, 437 P.3d 147 (citation omitted). A court abuses its discretion "if it denies a challenge for cause when a prospective juror's statements during voir dire raise serious doubts about the juror's ability to be fair and impartial or actual bias is discovered." *State v. Anderson*, 2019 MT 190, ¶ 11, 397 Mont. 1, 446 P.3d 1134 (citation omitted). If the defendant subsequently uses a peremptory challenge to strike the prospective juror and ultimately exhausts all afforded peremptory challenges, the erroneous denial of a challenge of a prospective juror for cause constitutes a structural error requiring automatic reversal. *Johnson*, ¶ 7.

¶9 LeCou argues that the District Court abused its discretion in denying his for-cause challenge to Prospective Juror Greenough, and that because he subsequently used a peremptory challenge to remove Juror Greenough from the jury and exhausted his peremptory challenges, we must reverse and remand for a new trial.

4

¶10 "Criminal defendants have fundamental federal and state constitutional rights to an impartial jury." *Johnson*, ¶ 9 (citing U.S. Const. amend. VI; Mont. Const. art. II, § 24). A defendant thus may challenge a prospective juror for cause if the juror demonstrates a state of mind that prevents the juror from acting with entire impartiality and without prejudice to the substantial rights of the defendant. Section 46-16-115(2)(j), MCA.

¶11 A district court need not remove a prospective juror for cause where the juror expresses concerns about remaining impartial but believes that he or she can fairly weigh the evidence. *State v. Braunreiter*, 2008 MT 197, ¶ 10, 344 Mont. 59, 185 P.3d 1024. The court should remove a juror, however, when the totality of the juror's voir dire statements raises a serious question or doubt about his or her willingness or ability to set aside bias and fairly and impartially render a verdict based solely on the evidence presented and instructions given. *Johnson*, ¶ 11. Courts should resolve ambiguity in favor of disqualification. *Anderson*, ¶ 15; *Braunreiter*, ¶ 10. This Court affords a degree of deference to the trial judge, who has the ability to "look into the eyes of the juror in question" and consider his or her responses in the context of the courtroom. *State v. Robinson*, 2008 MT 34, ¶ 13, 341 Mont. 300, 177 P.3d 488, *overruled on other grounds by State v. Gunderson*, 2010 MT 166, ¶ 50, 357 Mont. 142, 237 P.3d 74.

¶12 The district court may clarify a prospective juror's statements and ask questions to better evaluate whether the juror can set aside his or her bias. *Johnson*, ¶ 12; *Braunreiter*, ¶ 11. The court should not attempt to rehabilitate a prospective juror, however, by placing him "in a position from which [the juror] will not disagree with the

5

court." *Braunreiter*, ¶ 11. "In contrast to single-syllable answers prompted by leading questions, spontaneous and unprompted responses to open-ended questions are generally the most truthful, accurate, and reliable indicators of bias and the ability to be fair and impartial." *Johnson*, ¶ 11 (citations omitted).

¶13 LeCou argues that Prospective Juror Greenough's initial voir dire statements raised serious doubts about his ability to be fair and impartial when he singled himself out as being uncomfortable with LeCou's decision not to testify; stated he would listen to the judge but wasn't sure jury instructions would sway his opinion; expressed that his main concern was for the family of the victims; and stated "I don't think I can" in response to defense counsel's question whether he could "give assurances" to be fair and impartial.

¶14 In *Johnson*, we held that the district court erroneously denied the defendant's for-cause challenge to Prospective Juror S., who made multiple spontaneous statements that she would have a "problem" and a "hard time" requiring the State to prove an essential element of the offense charged and would likely be unable or unwilling to follow the court's jury instructions due to her firmly-held personal bias. *Johnson*, ¶¶ 4, 16. The prospective juror finally agreed in "single-syllable" answers to follow the jury instructions after being asked "a series of leading and loaded questions" by the State. *Johnson*, ¶ 16. We observed that the juror's statements of bias were "consistent, clear, unequivocal, and emphatic[.]" *Johnson*, ¶ 15. We further noted that the district court in that case summarily denied Johnson's challenge without independently following up with the prospective juror. *Johnson*, ¶ 5.

¶15 *Johnson* is distinguishable. Unlike Prospective Juror S.'s statements in that case, Greenough's statements were not "unequivocal" or "emphatic." Instead, he expressed uncertainty about his ability to set aside his personal beliefs, saying "I'm not sure" and "I don't think I can." As we have repeatedly held, "few people are entirely impartial regarding criminal matters[.]" *Anderson*, ¶ 15. A court is not required to remove a juror who "expresses concern about impartiality but believes he can fairly weigh the evidence." *Anderson*, ¶ 15 (citation omitted). Once the District Court explained the law to him, particularly that a defendant's choice not to testify could not be held against him, Prospective Juror Greenough agreed that he would listen to the judge if he took an oath to do so; fairly evaluate the witnesses; and honor the court's instructions. His answers thus differed from the juror in *Johnson*, who consistently and unequivocally stated that she would have a problem setting aside her personal beliefs and biases. *Johnson*, ¶¶ 4, 15.

¶16 LeCou also contends that, similar to *Johnson*, the State and District Court engaged in improper rehabilitation of Prospective Juror Greenough by asking him leading and loaded questions, to which he reluctantly gave "one-word" assents. He contends that Greenough's initial, voluntary statements were reliable indications of serious doubt about his ability to be fair and that the State and that the court coaxed him to recant by asking him questions that put him in a position of having to disagree with the court.

¶17 We find *Johnson* distinguishable in this regard as well. There, after the challenged prospective juror repeatedly expressed her bias, the State asked questions such as "Would it be impossible for you to [require the State to prove an essential element]?" and "Will you

7

follow that instruction even if that is difficult for you?" *Johnson*, ¶ 5. We explained that "[w]hen faced with the prospective juror's unequivocal bias . . . the State made no attempt to use open-ended questions to allow the prospective juror to clarify or allay the obvious problem with her patently biased responses." *Johnson*, ¶ 16. And then, based on the juror's "single-syllable" assents, the District Court denied the challenge without asking additional questions to confirm that the juror could be fair. *Johnson*, ¶ 5.

¶18   The State's questions in the instant case did not lead Prospective Juror Greenough to a compelled response like those at issue in *Johnson*, and the prospective juror did not demonstrate unequivocal bias like the juror in that case. And unlike the court in *Johnson*, the District Court here stepped in to educate Prospective Juror Greenough on the Defendant's rights and confirmed that Greenough would not hold against him any decision not to testify at trial. Though the District Court and counsel could have done more to educate Prospective Juror Greenough about the process and the constitutional rights of an accused in order dispel his honest misconceptions, *see State v. Morales*, 2020 MT 188, ¶ 19, ___ Mont. ___, ___ P.3d ___, we conclude that the District Court did not coax Greenough into recanting, but instead confirmed that Greenough would reach a verdict based on the evidence and the law. Able to look into Greenough's eyes and assess his responses to its own questions as well as to those posed by the State, the trial court was in the best position to make this determination.[1]

---

[1] As in *Morales*, ¶ 22 n.2, we observe that the Dissent raises valuable considerations but that imposing its suggested presumption would be a departure from our existing approach and has not been suggested or briefed by the parties.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not abuse its discretion when it denied LeCou's for-cause challenge to Prospective Juror Greenough. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Ingrid Gustafson, dissenting.

¶20 I dissent from the majority's affirmation of the District Court's denial of LeCou's for-cause juror challenge.

¶21 The Opinion accurately provides the legal framework of for-cause juror challenges, indicates a juror's state of mind may involve both fixed or concerning opinions and/or shared experiences, that spontaneous and unprompted responses are the most reliable indicators in assessing a juror's state of mind, condemns using leading questions to try to rehabilitate the juror, and indicates the need to err on the side of caution to remove a juror if questioning raises a doubt as to the juror's ability to be fair and impartial. Contrarily, the Opinion then excuses the subject juror's fixed prejudicial mindset, discovered through

9

spontaneous response, and "rehabilitated" by the prosecutor's leading questions to conclude recusal of the juror was not required.

¶22 Over the recent past, we have had a number of for-cause juror challenge appeals. Similar to this case, we have laid out the legal analysis condemning rehabilitation through leading questions and emphasizing the need to err on the side of removal and then decided most of these cases on a split basis.

¶23 As discussed in my dissent in *State v. Morales*, 2020 MT 188, ___ Mont. ___, ___ P.3d ___, we have failed to provide sufficient direction for district courts to reach consistent decisions regarding for-cause juror challenges. Again, I reiterate my belief that our prior holdings requiring district courts to err on the side of caution and remove a juror if questioning raises considerable doubts as to the juror's ability to be fair and impartial and should be interpreted as a presumption for recusal if a juror expresses unprompted statements indicating she or he could not be impartial or advances a fixed or set belief indicating the existence of a bias or prejudice to either side. The presumption could then only be overcome if in the course of open-discussion, not leading questions followed by monosyllabic responses, the juror unequivocally expresses an ability to set aside the set belief or bias or otherwise expresses recognition that his or her shared experience would not impact the way in which the juror perceives the alleged victim, the defendant, or the state.

¶24 Juror challenges call into question whether the juror has a state of mind that is truly impartial. In jury challenge cases we are balancing the defendant's constitutional right to

10

a fair trial against the practicalities of losing too many jurors such that trial has to be rescheduled.[1] This heightened right to a fair trial, however, is the basis of this Court's prior holdings that courts should err on the side of disqualification when a juror's mind set calls into question his or her ability to be fair and impartial and act without prejudice to either party. *Anderson*, ¶ 15; *see also Johnson*, ¶ 19; *Jay*, 2013 MT 79, ¶ 19, 369 Mont. 332, 298 P.3d 396; and *Golie*, 2006 MT 91, ¶ 18, 332 Mont. 69, 134 P.3d 95.

¶25 Here, the subject juror, in response to counsel's questioning expressed a fixed mindset that he expected LeCou to testify—to "look me in the eye and tell me what happened"—and he would have a lot of problems hearing LeCou say, "Yeah, I didn't do it." Clearly, these responses raised considerable doubts as to the juror's ability to be fair and impartial—indeed it appears the juror already believed LeCou guilty and would, even if LeCou testified, have trouble accepting any testimony from LeCou asserting he did not commit the crimes. I would conclude this raised a presumption for recusal. The prosecutor then, through leading interrogation, used the juror's rigid mindset involving his "code of honor" to lead the juror to assert in monosyllabic responses that he could follow the court's instructions. This "rehabilitation" in no way alleviated the juror's original prejudicial mindset that LeCou committed the crimes and that he would not accept evidence from him otherwise. This "rehabilitation" did not result in the juror unequivocally expressing an

---

[1] Here, in this triple homicide where the jury returned a guilty verdict in only a couple hours, this unnecessary appeal risk could have easily been eliminated by adhering to a presumption of recusal and summoning a few extra jurors.

11

ability to set aside his set belief or bias toward guilt and make a determination of guilt based solely on the evidence presented at trial.

¶26 Given the heightened right to a fair trial, the emotionally charged nature of a triple homicide, and the juror's expression of both a preconceived notion that LeCou should testify and his unwillingness to accept anything other than an a full admission from LeCou, I believe our prior holdings to err on the side of recusal are implicated. Further, the presumption was not overcome with the juror's unequivocal expression of an ability to set aside his fixed mindsets through open-discussion and not leading questions followed by monosyllabic responses. Thus, in this case, I would conclude the District Court abused its discretion in failing to dismiss the subject juror for cause.

¶27 Frequently, for-cause challenge appeals involve jurors expressing an expectation or fixed belief the defendant should testify and tell his or her version of events to prove she or he did not commit the offense. This expectation generally comes from a lack of understanding of the law as to the State's burden of proof, as well as a lack of understanding of the defendant's constitutional right not to testify or present evidence. To avoid these juror misconceptions, I again encourage district courts to better educate jurors at the outset of trial before voir dire as to what is going to happen, how voir dire works, its purpose, the State's burden of proof, and the defendant's absolute right not to testify or present evidence. Having some information as to these concepts in advance may better assist jurors in understanding the voir dire process and in responding to counsels' questions.

/S/ INGRID GUSTAFSON

12

Justices Dirk Sandefur and Laurie McKinnon join in the dissenting Opinion of Justice Gustafson.


/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON